Eannrt, J.
This suit is brought upon the official bond of Beam as auditor of Knox county. The breaches alleged consist of a great number of misfeasances and nonfeasances in the discharge of his official duties, which it is charged have resulted in injury to the county. To some of these breaches the defendants pleaded the statute limiting actions against officers for these causes to one year, *130 This plea being demurred to by the plaintiff, presents the single question ^whether it constitutes a sufficient bar to the action. It is not doubted that this precise question was made and decided affirmatively in the case of the State for the use of Mount Pleasant Bank v. Conway, 18 Ohio, 234; but the correctness of that holding is denied. Wo have again carefully examined the subject, aided by the able •and thorough discussion of counsel, and a majority of this court are of opinion that the law was correctly settled by our predecessors. In coming to this conclusion, we might with propriety stop; especially in view of the fact that the reasons for that decision are fully stated, and by a judge whose clear and comprehensive mind and powers of reasoning seldom left anything material to be added by those who follow him, or'any more striking view of the subject than he has presented. I shall only notice such further considerations as the course of the present argument has made necessary; and in doing so, it is at once conceded that the action is i'n debt, founded upon a specialty, and contains an agreement in writing that Beam should well and truly perform all the duties devolved upon him as auditor of Knox county, and that a failure to do so would be a breach of the bond tor which both principal and sureties would be liable to make reparation to any one injured thereby, ■and if the statute contained nothing further limiting such liability than the third clause of the first section of the “ act for the limitation of actions,” the liability would be governed by that ■clause, and -would continue for fifteen years. At the same time it -can not be denied that such a- bond is only a collateral security for the faithful performance of the official duties of the officer (Walton v. The United States, 9 Wheat. 651), and that the defendants are only liable as his sureties; and as such entitled to all the rights .arising from that relation, and growing out of the contract into which they have entered.
Prom the first part of this proposition, it necessarily follows that the collateral obligation can exist no longer than the liability it was created to'secure; while, upon the last, the universally acknowledged doctrine is, that “it is of the essence *of the •contract of suretyship, that there be a subsisting valid obligation of a principal debtor. Without a principal there can be no accessory; and by the extinction of the liability of the former, the latter becomes extinct.” Russell v. Failor, 1 Ohio St. 329; Burge on Sur. 3; Theo. on Prin. and Sur. 2.
*131 Whatever, therefore, amounts to' a good defense to the original liability of the principal, is a good defense for the sureties when sued upon the collateral undertaking. Couch v. Waring, 9 Conn. 261.
Otherwise, the principal would be indirectly deprived of tho ■benefit of a valid defense against the creditor, by being compelled, in effect, to respond through his sureties; or the sureties would be deprived of their right to reimbursement from the principal, and ■thus one or the other bo compelled to lose the rights which the law ■had secured to them.
For every nonfeasance or misfeasance in office, the officer is liable to the party injured; and this is the liability which the principal has incurred, to which the official bond is accessory, and to which the sureties have undertaken to respond;—the object and purpose of the law being to secure to tho party injured the responsibility of others than the officer, the more certainly to afford him satisfaction for his injury. Does this liability continue against the officer beyond one year? If not against him, it certainly can not against his sureties. .
The statute expressly says, that actions against him for either of these causes may be commenced “within one year,” “ and not after.” But it is said this clause of the statute only applies to actions on the case commenced against him alone, while actions upon the official bond for the same official delinquencies may be prosecuted at any time within fifteen years; the one being governed by the sixth, and the other by the third clause of the first section of the act for the limitation of actions.
. Whether this is so, must depend upon the construction to be put upon that statute ; and a correct construction is given *only when the intention of the general assembly is ascertained. That body will not be presumed to have intended such a construction to be given the act as would result in absurd or unjust consequences. Now, for good reasons, and reasons which need not be stated to be appreciated, the legislature has in terms limited all actions against the officer for malfeasance and nonfeasance in office to one year. This is done for his protection against these charges, made after it may well be presumed, the evidence to refute them has been lost, or, in the multitude of official duties, the circumstances have been forgotten. After all this care to protect his rights and interests, it would indeed be singular if it was intended to leave open his lia *132 bility in another form for the same causes, to be supported by exactly the same evidence, and attended with the same consequences, for fifteen years; thus, to every intent and purpose, nullifying the whole policy of the other provision.
It is a settled rule of construction that the intention of the lawmaker is to be deduced from a view of the whole, and every part of the enactment, taken and compared together. He must be presumed to have intended to be consistent with himself throughout, and at the same time to have intended effect to be given to each, and every part of the law. And from this it results that general language found in one part, is to be modified and restricted in its. application, when it would otherwise conflict with specific provisions found in another; and this from the reasonable and almost irresistible conclusion, that when the mind is directed to any particular subject, the language used is more likely to express the intention than general words which might otherwise cover it, but. from which it does not appear that the particular ease was intended to be provided for. Applying this general rule to this statute, and its construction seems to us plain. The third clause was intended to, and does, cover an extensive class of cases; but it could not have been intended to give it so extensive application as to nullify the whole of the sixth clause, which relates exclusively to, and was intended to *provide for, this particular injury, no matter in what form or manner it might be prosecuted. This gives effect to both clauses, and preserves the integrity of both—makes the act throughout consistent with itself, and gives substantial protection to the officer; while the contrary would be nothing better1 than an illusion, and from which the general assembly must be supposed to have done a vain thing. The last clause is thus made to limit the general language of the first, by excepting from its operation the particular injuries specifically provided for in the last. This is but doing what must be done in the construction of almost every law containing many provisions, and providing for a variety of cases. The time may be too short, as counsel claim, and it is very possible that the bar may in some cases intervene before the injury is discovered; but all such considerations belong to the legislative and not the judicial department.
So far as it is used as a means of arriving at the presumed intention of the general assembly, it is quite legitimate ; but it fails to convince us that that body intended' to allow a sheriff and his *133 sureties to be prosecuted for a false return, or a failure to levy upon property, fifteen years after he may have gone out of office, and at •a time when neither can be supposed to have in theit power the means of defense, however honest it may be that they should make it.
In our opinion, the plea is' sufficient, and the demurrer must •therefore be overruled.